The last case this afternoon is 524-0625, People v. Spears. Arguing for the appellant is Elizabeth Boddy. Arguing for the appellee is Hiram Finjack. Each side will have 10 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Morning, I'm sorry, good afternoon. Good afternoon. If you all are ready, Ms. Boddy, you may begin. Just out of curiosity, before you start, what time did you expect to get your case heard today? I was expecting around 2.30 or a little after. Oh, that's pretty good. Yeah. How about you, Mr. Finjack? Yeah, that's what the clerk told me, around 2.30. We're very precise, so that's why we're so close to that time. Kudos to the clerk for getting that correct.  All right, Ms. Boddy, you're ready to begin, you may. My name is Elizabeth Boddy from DePaul's Criminal Appeals Clinic, and I represent Dakota Spears. Of the four arguments raised on appeal today, I'd like to focus on the first two, starting with argument one, which concerns whether section 5-24-1.1e violates due process and is unconstitutional on its face. And then I'll move on to argument two, which is whether the statute violates the proportionate penalties clause as applied to Dakota. Under this statute, Dakota faced a mandatory minimum sentence of 10 years in prison because of a prior nonviolent theft conviction, and because he passively possessed his better-uncle's military vest. Let me stop you. When you say passively possess, what does that mean? He didn't possess it with any criminal intent or purpose, and he wasn't wearing it at the time of the offense. It was sitting on a couch in the garage where he temporarily lived. You were talking at the moment he was arrested, is what you're referring to then. He did testify he does wear it around town. He wore it around town, and he admitted to wearing it defensively because he had been shot at. Dakota came from a military family. He had military aspirations. If you look at the exhibits in this case, you can see that he was patriotic. There's a huge American flag on display in the garage where he lived. And his possession of this is more of an expression of patriotism and really a desire to kind of look cool. He didn't have it to wear while committing a crime. He just passively, constructively possessed this, his uncle's vest, and he had no means. But we're talking about, again, and that's another term that I have issue with, constructive possession. He was gifted this, correct? He was gifted it from his better-uncle, yes. So it became his when he accepted the gift. Right. And I'm assuming he accepted that gift prior to his criminal history. It's unclear. I don't know. So regardless if it was before then or after then, once he obtained his criminal history, he has a responsibility of knowing what he can and can't have in his possession, correct? He does. Okay. All right. You may go further. He was found in possession of his friend's ammunition. He didn't have a gun, so he had no means of discharging that ammunition. And yet, Dakota, who has never before been to prison, fell under the statute and is now serving a 14-year prison term. This is not the intent or the result that the legislator intended. The statute violates due process for several reasons. First, it imposes a punishment that's significantly greater than punishments imposed for more culpable and more dangerous conduct. Take, for example, someone who shoots someone and causes bodily harm faces a less severe penalty than Dakota did. A felon walking the streets in public with a loaded machine gun faces a less severe penalty than Dakota. Someone who shoots into a building knowing it's occupied faces a less severe penalty than Dakota. If any of those acts were committed by someone doing those acts while in possession of a body armor, would they also be subject to less of a penalty? Some of those people would fall under 33-F, and that would be a lesser penalty than what Dakota faced. If a felon was possessing a loaded machine gun and wearing body armor, then that person would fall under the same statute as Dakota. Yeah, so if we compare what your client was charged with to similar charges, in other words, the compounded matter of having on the body armor, then we're talking about similar type of sentences. No, the 33-F has a lesser sentence, and that's someone who's committed a crime with a weapon other than a firearm and wearing body armor and committing a violent crime is subject to a lesser sentence. So it's absurd and unjust to punish Dakota more harshly than any of those offenders when Dakota didn't possess this vest with a criminal intent or purpose and didn't have the means to fire that ammunition. And it's illogical to say that the legislator intended that absurd result. We know the legislator did not intend that result. Let me stop you one more time, just a clarification of some of the facts. And I apologize, we've got a lot of cases on our docket this week, and so in preparing sometimes when similar cases are involved, I just want a little clarification so that I remember exactly. In this case, he was charged with having possession of, was it .22 ammunition? .22 caliber, yes. .22 caliber ammunition. And then was there also a single, for some reason it keeps coming into my mind that there was also a single .38 caliber round? Is that wrong? I don't recall there being a single .38 caliber being found. I think it was just this box of .22 caliber ammunition. I thought there was a box of ammunition and one additional shell or round. There might have been an additional shell, but I know it wasn't a .38 caliber because there was an allegation that he was involved in this prior incident involving break-ins, and that offender used .38 caliber rounds, and there were no .38 caliber rounds found in the garage where Dakota was living. So I think that extra one was just a .22 caliber. I know there weren't any .38 calibers found in the garage. Okay, so there may have been that bag of .22 round and then a loose round in addition. There might have been, but they were all .22. And he said that they all belonged to his friend, and he had been holding onto them for a number of years. The statute also is overly broad. It sweeps too broadly and irrationally penalizes conduct unrelated to its purpose. The legislator enacted this statute to deter violent felons from committing violent crimes while wearing body armor because armor defenders are more difficult to subdue. However, the legislator didn't limit the statute to those possessing the body armor with a couple of months of state. It didn't limit the statute to those who possessed these items with the intent to commit a violent offense. And without that couple of months of state, the statute sweeps too broadly. Dakota's case illustrates the far-reaching and unintended consequences of this poorly worn statute, imposing an enhanced Class X penalty on Dakota, who, again, didn't possess this vest with any criminal intent or purpose, and who had no means of firing the ammunition. It does not in any way further the legislative goal of deterring violent felons from committing violent crimes while wearing body armor. Dakota did not possess the vest in the manner that the legislator intended to criminalize. It did not intend for the statute to apply to him. And indeed, the statute, as written, raises the exact same concerns expressed by Representative Linder during the legislative debates. Let me ask you this, why are we getting to the legislative debates and not just looking at the plain language? The plain language, I don't see where it's overbroad in so much as it says felons cannot possess firearms or ammunition and or, in this case, any body armor. It's very narrow. It's only related to felons in possession of those items. Right. I think the absurd result of Dakota's conviction shows that there's some ambiguity in this section. When you look at subsection E in the context of the entire criminal code, which is permissible under the rules of statutory construction, you see how absurd this result is. There's something missing. And what's missing is that limit on that criminal intent that the legislator did not put in. And I think it's just oversight. But if we can't get to the if the plain language is not ambiguous, how do we get to the legislative intent? And if we're stuck with the plain language, then it's not a specific intent. It's a general intent. It's a general restriction for felons to be in possession of those items. And I think you do get to the intent because I think the statute is ambiguous. But if we disagree, then you can still find that the statute is unconstitutional as applied to Dakota because it violates the proportion of penalties clause. As I stated earlier, he did not possess this vest with any criminal intent or purpose. He wasn't wearing the vest. It was sitting on a couch in the garage where he temporarily lived. He didn't possess a gun, so he couldn't fire the ammunition. He wasn't committing, attempting to commit or intending to commit a crime of violence. He was completely cooperative with the police and posed no threat to them. And so he's never been convicted of a violent crime. This is the first time he's gone to prison. And sensing him to 14 years in prison for possessing his veteran uncle's vest with no criminal intent or purpose and no ability to discharge that firearm is so disproportionate to the offense and the offender that it shocks the moral sense of the community and is unconstitutional as applied to Dakota. So whether you find the statute, you can find it facially unconstitutional because it violates due process or find it unconstitutional as applied to Dakota. Any questions, Justice Moore? No questions. All right. Thank you. You'll have time and reply. Mr. Finjack? Good morning, Your Honors. This is Hiram Finjack representing the state of Illinois. With respect to the defendant's due process challenge, the subsection E of the statute, specifically that the subsection in question sweeps too broadly and criminalizes innocent conduct unrelated to its purpose, this argument is incorrect. The defendant citing comments made during the legislative process contends that the legislature only intended subsection E to target violent felons who wear body armor while committing or attempting to commit violent crimes. However, as the Supreme Court has explained, the proper inquiry in determining a statute's purpose is to first examine the plain language of the statute itself, as that is the best indicator of the legislative intent and statutory purpose. Therefore, the defendant's reliance on the legislative history to argue that subsection E's purpose is narrower than its plain language is improper. In the Illinois Supreme Court and Homestar Bank, made clear, as I mentioned before, the best indication of the intent is the statutory language, which must be given its plain and meaning, and it's improper for a court to depart from the plain language by reading into the statute exceptions, limitations, or conditions that conflict with the clearly expressed legislative intent. Where the language is clear, it will be given effect without resort to other aids of construction. Here, the language of the statute is unambiguous. Subsection A prohibits any person convicted of a felony from possessing a firearm or ammunition, and subsection E provides a sentencing enhancement for those felons who are found in possession of firearms or ammunition while also in possession of body armor. Thus, based on the clear language of the statute, its overall purpose is to prohibit felons from possessing firearms or ammunition with the aim of protecting public safety. Decisions in Pogue, Garvin, and Crawford have all explicitly found as such. Subsection E, by enhancing the penalties for felons who violate the statute, clearly reflects the legislature's determination that the combination of a felon in possession of a firearm or ammunition and body armor poses a particularly grave threat to public safety. The statute doesn't, neither of those provisions, specify what type of felon in terms of, for example, felons who are convicted of violent crimes as opposed to non-violent crimes. Is that correct? Correct. It just applies to anyone who is convicted of a felony. In terms of the due process argument, based on the fact that the subsection imposes a more severe penalty for possession of firearm ammunition and body armor by a felon than those prescribed for various other firearms and body armor offenses that the legislature's intent and fails to satisfy the rational basis test because it's not reasonably designed to remedy the legislative purpose of enhancing public safety. However, the legislature has broad discretion to determine the relative seriousness of offenses and prescribe appropriate penalties. People v. Sharpe, the court noted that courts should not make subjective determinations about the seriousness of one crime compared to another. The defendant's subjective belief that other offenses are more serious does not render subsection E unconstitutional. The situation here is unlike that in Bradley, which the defendant cites in support, where provisions within the same statutory scheme directly contradicted the legislature's express purpose to punish delivery of controlled substances more harshly than mere possession. Therefore, the defendant has failed to meet his burden of clearly establishing that the subsection is facially unconstitutional and violates due process. Turning to the defendant's Eighth Amendment and proportionate penalties challenge, with respect to the Eighth Amendment, outside of the context of capital punishment, successful challenges to the proportionality of a particular sentence are exceedingly rare. Examples of sentences that have been held to violate the Eighth Amendment include the sentence of life imprisonment without the possibility of parole for a seventh non-violent felony conviction, mandatory life imprisonment without the possibility of parole for juveniles convicted of non-homicide offenses. The defendant's situation is readily distinguishable from these cases, as his 14-year sentence falls far short of the type of extreme punishment found to violate the Eighth Amendment. I was just going to say that his sentence did fall on the lower end of the statutory range for a violation of this subsection for 14 years. In terms of his contention that the sentence violates the proportionate penalties clause, a sentence is considered to violate the proportionate penalties clause of the Illinois Constitution if the punishment is cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community. Like his Eighth Amendment challenge, the defendant has failed to demonstrate that his 14-year sentence for unlawful possession of firearm ammunition by a felon while possessing body armor is so wholly disproportionate to his offense as to shock the moral sense of the community. As I mentioned before, the defendant's sentence was well within the prescribed statutory sentencing range, actually on the lower end, and reflected the seriousness of the offense. Moreover, the trial court considered relevant mitigating factors such as the defendant's lack of violent criminal history and reasonably concluded that a 14-year sentence was appropriate in this instance. Therefore, the defendant's sentence does not violate either the Eighth Amendment to the U.S. Constitution or Illinois's proportionate penalties clause. Thank you, your honors. Mr. Zborn, any questions? No questions. Okay, thank you. Ms. Bobby, you may have time to reply. The purpose of subsection E is not explicitly stated in the statute, and as I said previously, if you look at subsection E within the context of the entire criminal code, and you see the absurdity of Dakota's sentence, there is some ambiguity in the statute. And the ambiguity exists because the legislature limited it to violent felons and to violent felons with the specific intent to commit a violent offense. If you look at the laws in other jurisdictions, everyone has one. There's a federal law and every state has one. And most, if not all, are limited to non-violent felons or to felons committing a violent offense. And most of them have exemptions. They exempt people who need to wear the body armor for their employment, for their livelihood, or their safety. When you look at Dakota's sentence compared to the sentences for more culpable, more dangerous conduct, that shows that this statute violates due process. You don't even really have to get to the legislative intent for that. Under Bradley, the statute violates due process. And the state's attempt to distinguish Bradley really is a distinction without a difference. We know that shooting someone and causing bodily harm, and we know that a felon walking around with a loaded machine gun is objectively more dangerous than Dakota possessing his uncle's vest and his friend's ammunition. And we know that the statute, the language of the statute, contradicts the legislator's intent. So this case falls under Bradley. And under Bradley, it violates due process, even if you don't get into the legislative debates. But the legislative debates confirm that the statute was not intended to go after someone like Dakota. And this court has an obligation to construe a statute in a way that doesn't lead to an absurd, unjust result. And the state's literal interpretation of the statute has led to an absurd, unjust result. Though the legislator has broad discretion in fashioning sentences and penalties, that discretion is limited by the constitutional guarantee that no one's liberty can be deprived without due process of law. Dakota's liberty was deprived for 14 years without due process of law because of this statute. As to the proportion of penalties claimed, yes, the sentence is within the range, but he never should have been subjected to this mandatory minimum of 10 years in prison for his conduct. And the judge couldn't consider, the judge even said, my hands are tied. The judge couldn't consider any of the mitigating evidence, no matter what the mitigating evidence was, no matter that he didn't possess the vest with the criminal intent of purpose. Doesn't matter that he couldn't discharge the ammunition. Nothing mattered. The judge had to sentence him to a mandatory minimum of 10 years in prison. And that sentence, given his non-culpable possession of that vest and his inability to fire the ammunition, he posed no threat. That sentence is so disproportionate to the offense and to Dakota that it does shock the moral sense of the community and is unconstitutional. So I ask that this court find the statute unconstitutional on its face, as courts have done in Carpenter, in Wick, and all the other cases I cited in the briefs, or as applied to Dakota, and either vacate a sentence and conviction under Subsection E and sentence him to the mandatory minimum of a violation of Subsection A, or remand the cause for a new sentencing hearing before a different judge. Thank you. All right. Thank you, Justice Boren. Any questions? No questions. All right. Thank you both for your briefs and your arguments here today. We will take them out of consideration and it's your ruling in due course. You all have a good rest of your day. Thank you. Thanks, you too. Thank you.